[Civ. No. 28711.   Second Dist., Div. Three.   July 28, 1966.]

WILLIAM ALEXANDER FISHER et al., Plaintiffs and Respondents, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant.

750

Spray, Gould & Bowers and Eugene R. Grace for Defendant and Appellant.

Wiener & Wiener and Albert C. Mour for Plaintiffs and Respondents.

KAUS, J. — State Farm Mutual Automobile Insurance Company ("State Farm") appeals from a judgment entered in conformity with an arbitration award. (Code Civ. Proc., § 1287.4.)

The facts are very simple: State Farm issued an automobile liability policy to William Fisher. It contained the so-called "uninsured motorist coverage" prescribed by section 11580.2 of the Insurance Code. The arbitration agreement contained in the policy under which the subject arbitration was held reads in part as follows: "*Arbitration.* If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, *or do not agree as to the amount payable hereunder,* then each party shall, upon written demand of either, select a competent and disinterested arbitrator. . . . The arbitrators shall then hear and determine the question or questions so in dispute, and the decision in writing of any two arbitrators shall be binding upon the insured and the company, . . ." (Italics added.)

Without the necessity of judicial prodding the parties proceeded to arbitration. The award, after the usual recitals, reads as follows: "That Respondent, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, is required to pay to the Petitioner, WILLIAM A. FISHER, the sum of $70.00. That Respondent, STATE FARM MUTUAL AUTOMOBILE INSURANCE COM-

PANY, is required to pay the Petitioner, LINNIE P. FISHER, the sum of $5,756.37. This award is based on the evidence as submitted to the panel at the hearing on January 11, 1964, and includes special damages for the Petitioners WILLIAM A. FISHER and LINNIE P. FISHER as well as general damages for the Petitioner, LINNIE P. FISHER.''

There is no dispute about the fact that Linnie P. Fisher was an insured within the meaning of section 11580.2, subdivision (b).

The Fishers then petitioned the superior court to confirm the award. The affidavits filed by the parties in connection with the proceedings seeking confirmation and State Farm's opposition thereto show quite clearly that under the so-called ''medical payment coverage'' of the State Farm policy, the company had paid $1,000 to Linnie Fisher and $70 to William Fisher. These payments were all made before the date of the hearing before the arbitrators. The whole controversy centers on State Farm's contention that these payments should have been deducted from the award by the superior court.

Under section 11580.2, subdivision (g) (2) any ''loss payable under the terms of the uininsured motorist . . . coverage . . . may be reduced [b]y'' the amounts thus paid under a medical payment coverage and the policy issued by State Farm expressly so provided. It is obvious from the declarations filed in the superior court that these payments were not brought to the attention of the arbitrators.

██ If only the issues declared to be arbitrable under section 11580.2 had been agreed to be submitted to arbitration, we would entertain serious doubts whether the award can stand *in toto*. These issues are ''whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof . . . .'' (Ins. Code, § 11580.2, subd. (e).) They relate clearly to the liability of the uninsured motorist to the insured and not to the amount of money which the insurance company must pay the insured under the uninsured motorist coverage. (*Aetna Cas. & Surety Co.* v. *Superior Court*, 233 Cal. App.2d 333, 337 [43 Cal.Rptr. 476].) ██ The amounts paid under the medical payment coverage, on the other hand, are declared by subdivision (g) (2) of section 11580.2 to be deductible from the ''loss payable'' under the terms of the uninsured motorist coverage. This ''loss'' is by no means synonymous with the liability of the third party to the insured, chiefly because it is limited to ''the financial responsibility requirements specified in section 16059 of the Vehicle Code.'' (Ins. Code, § 11580.2,

subd. (a).)[1] ▓▓▓ It is obvious, however, that under the arbitration agreement the parties herein contracted to submit to arbitration more than the statute requires. There is no rule of law which prevents them from doing so. ▓▓ The key words of the policy are: "If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, *or do not agree as to the amount payable hereunder, . . .*" Having agreed to submit to arbitration not only the amount of liability of the uninsured motorist but also "the amount payable hereunder,"[2] State Farm should have submitted all matters pertaining to the "amount payable" to the arbitrators. Having failed to do so, it cannot subvert the purposes of the arbitration procedure by asking the superior court to do it later.

In *Sapp* v. *Barenfeld,* 34 Cal.2d 515 [212 P.2d 233] the parties to the arbitration were the owner of a building and his contractor. The latter was to complete the job within 180 days. Disputes arose and the parties agreed to arbitrate. The arbitrators found that the contractor had failed to conform to the specifications in some respects, deducted the cost of the work necessary to remedy the defects from the balance due him under the contract and awarded him the difference. The

---

[1]Thus in *Jarrett* v. *Allstate Ins. Co.,* 209 Cal.App.2d 804 [26 Cal.Rptr. 231], a case decided under an uninsured motorist coverage before such coverage was compelled by statute, it was held that a reduction by workmen's compensation payments from the "loss payable," should be taken from the sum of $10,000 and not from the actual damages suffered by the insured.

[2]The word "hereunder" clearly applies to the policy and not the liability of the third person. It is part of the "conditions" applicable to the "uninsured automobile coverage" which, together with other conditions, refer to several factors which may make the amount payable by the insurance company something quite different than the amount for which the uninsured motorist is liable. There is no conflict between the broad agreement to arbitrate all questions arising under the policy and the command of section 11580.2 which makes only the amount of damages which the insured shall be legally entitled to recover from the uninsured motorist subject to arbitration. The amount "payable hereunder," that is to say under the policy, will necessarily depend, in part, on the amount of the liability of the uninsured motorist.

It seems appropriate to point out that the distinction between a broad agreement to arbitrate the liability of the insurance company to the insured under the policy and a narrow agreement merely to arbitrate those issues which must be arbitrated under section 11580.2 harmonizes two decisions which might otherwise seem difficult to reconcile, namely *Aetna Cas. & Surety Co.* v. *Superior Court,* 233 Cal.App.2d 333 [43 Cal.Rptr. 476] and *Jordan* v. *Pacific Auto. Ins. Co.,* 232 Cal.App.2d 127 [42 Cal. Rptr. 556].

superior court vacated the award, giving as one of its reasons that the arbitrators failed to pass on the owner's claim for damages for delay. One of the arbitrators filed an affidavit before the superior court to the effect that the item of damage from the delay had not been considered. Although this affidavit was held to be properly filed, the Supreme Court reversed the order vacating the award: ''The arbitrators were not required to consider the item of damages for failure to complete the construction within 180 days unless they were presented with evidence upon which a computation of damages could be based. A party who asserts a claim in an arbitration proceeding must produce evidence in support of that claim; if he fails to do so, he cannot attack the award on the ground that the claim was not considered by the arbitrators.'' (*Ibid.*, p. 524.)

A proper respect for the arbitration procedure compels us to hold that State Farm cannot have the superior court do for it what it should have asked the arbitrators to do. Of course in the case before us it would be a simple matter of deducting $1,070 from the award, there being no dispute as to the facts; but the question of where a particular issue should be litigated does not depend on its simplicity. In another case there may be a serious dispute between the insurance company and the insured whether medical payments made by the company are referable to the accident which is the subject matter of the arbitration or to some other mishap. Because the medical payment coverage usually has a fairly low limit ''per accident,'' the resolution of these disputes can result in a holding by the arbitrator that certain medical expenses which exceed such a limit are not payable by the company at all.

Having drafted a broad arbitration agreement, State Farm cannot complain that the superior court enforced it literally.

There is nothing in the recent case of *Northwestern Mut. Ins. Co.* v. *Rhodes,* 238 Cal.App.2d 64 [47 Cal.Rptr. 467] that is contrary to our holding. That case was a declaratory relief action by the company to have it declared that after the completion of arbitration proceedings similar to those involved here, it was not obligated to pay the assured's medical expenses under its medical payment coverage. When the declaratory relief action was brought, the arbitration proceedings had been fully completed and Mrs. Rhodes had been awarded $5,965.62. At the time of the arbitration Mrs. Rhodes had incurred $1,028.19 in medical expenses for which she had not then been reimbursed by the company. Medical reports

were submitted to the arbitrator which indicated that she would require further medical treatment, but the record was silent as to whether evidence of the probable cost of such future treatment was introduced. The company did not request the arbitrator to reduce the award by the amount of Mrs. Rhodes' obligations for medical expenses and no such reduction was made by him. On these facts the superior court held that the award included medical expense and that Mrs. Rhodes was not entitled to a "windfall."[3]

It is one thing to refuse a double recovery to an insured in a declaratory relief action in which the insurance company can affirmatively show that the insured has already received the benefit of a certain coverage and quite another not to permit the insurance company to modify an award for the only reason that it failed to produce evidence at the arbitration on an issue which was properly before the arbitrators. If the result of our holding causes an injustice to State Farm—a proposition with which it will readily agree—the injustice to it is certainly no greater than the injustice when a motion for a new trial is denied on the basis that evidence first presented at the motion is not "newly discovered." The reasons of public policy which compel us to uphold the integrity of the arbitration process simply outweigh the wrong done to one litigant.

State Farm attempts to avoid the conclusion which we have reached by arguing that the arbitrators' award shows on its face that they exceeded their powers by awarding special damages. The point made is that under cases such as *Drake* v. *Stein*, 116 Cal.App.2d 779, 785 [254 P.2d 613] the submission to them was limited by the "basic agreement of the litigants," that is to say the policy, which provided for the deduction of amounts paid under the medical payment coverage.

Whatever may be the reach of the doctrine referred to—for one of its limitations see *B.S.B. Constr. Co.* v. *Rex Constr. Co.*, 200 Cal.App.2d 327, 333 [19 Cal.Rptr. 167]—it is not applicable here. █ It certainly does not appear from the face of the award, nor for that matter from any of the declarations filed before the superior court, that the arbitrators were ever

---

[3]The superior court in *Northwestern* denied Mrs. Rhodes not only the items of medical expenses concerning which there was evidence before the arbitrator, but also refused to declare that Northwestern was liable for further medical treatment the cost of which had not been reduced to a monetary figure at the time of the arbitration. The District Court of Appeal approved, stating that her counsel was responsible for any omission to present an estimate of the future medical costs to the arbitrator.

advised that the special damages had been paid by State Farm. For all we know the arbitrators determined the amounts from doctors' bills and the like or from testimony concerning the reasonable value of the services. Thus it cannot be said that the arbitrators refused to be guided by the basic agreement. State Farm simply failed to provide the proper guidance.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 28, 1966.