[Civ. No. 29344.   Second Dist., Div. Four.   Feb. 15, 1967.]

COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Plaintiff and Respondent, v. DOROTHY COPELAND et al., Defendants and Appellants.

James W. Thomason for Defendants and Appellants.

Clausen & Gilliland and Kenneth H. Clausen for Plaintiff and Respondent.

JEFFERSON, J. — The plaintiff insurance company brought an action, seeking a declaration that all claims against it under the uninsured motorist coverage provided in a policy issued by plaintiff to defendants Dorothy and James Copeland, have been settled by a binding release executed by defendants; and for a permanent injunction restraining defendants from proceeding with the arbitration of these claims. The case was submitted to the court on the depositions of defendants, two doctors, an insurance agent and an insurance adjuster; plus certain medical records and documents signed by defendants which related to their claims. From a judgment granting the relief sought, defendants appeal.

On October 15, 1961, Mr. and Mrs. Copeland were in their car, with Mr. Copeland driving and Mrs. Copeland seated beside him in the front seat, when they stopped at an intersection and were struck from the rear by another car, its driver allegedly uninsured. After the collision Mrs. Copeland was still seated on the seat in an upright position. Her neck began to hurt almost immediately. The next day she went to see Dr. Ryan complaining of a stiff neck. He examined her and had X-rays taken of her neck with negative results. On October 23d she returned to Dr. Ryan's office with the same complaint. For these two visits and the X-rays Mrs. Copeland was charged $37.

Sometime in the early part of November 1961, Mrs. Cope-

land began to feel pain in her low back area. A small ache at first but in a few days it became quite severe. On December 15, 1961, she went to Dr. Sherwood, a chiropractor. After several treatments the low back pain was not as severe but it still remained to some extent at all times thereafter. On January 23, 1962, Mrs. Copeland signed and submitted to plaintiff a proof of claim form under the uninsured motorist coverage. In it she described her injury as a stiff neck. On February 6, 1962, she and Mr. Copeland executed a document titled "Release of Claims for Benefits on Account of Bodily Injury or Death Caused by Uninsured Automobiles." As consideration for the release they received $50. At that time, although she "didn't know" that the low back pains were caused by the accident, she "had thought of it." On the same date the Copelands also executed a receipt and release form, under the medical payments coverage, for the sum of $37, the cost of the treatment for her sore neck and from which injury she had at that time nearly fully recovered. On February 16, 1962, when her low back pains began to get more severe, she went again to Dr. Sherwood for treatment and, when they grew still worse, on February 24, she went to Dr. Hawkins. She told the latter her back pains were caused by the automobile accident.

Dr. Hawkins had X-rays taken of Mrs. Copeland. The X-rays showed evidence of disc degeneration in her low back together with arthritic spurring. Hawkins testified (by deposition) that these conditions take several years to develop and that almost any kind of trauma will bring on the onset of symptoms or complaints; "it could have been related to the accident," but he "would expect some signs of back pain, or stiffness within a few days or instantly" if an accident occurred of sufficient severity to injure the disc "right then and there." The conditions from which Mrs. Copeland suffered could also have come on gradually without accident or trauma; or from doing nothing more than bending over or sneezing, something so commonplace a person would not be aware of it; that it is "just anybody's guess" as to what caused the symptoms to appear.

On October 3, 1962, Mrs. Copeland filed a demand for arbitration with the American Arbitration Association under the uninsured motorist coverage of the policy issued by plaintiff. The present action followed.

The policy of insurance issued by plaintiff to defendants contains the "uninsured motorist coverage" prescribed by

564

section 11580.2 of the Insurance Code, no more, no less.[1] In respect to arbitration, it provides, in accordance with section 11580.2, that the "determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

At the outset defendants contend that the court below had no authority to determine the legal effect of the release; such determination they argue, the contract of insurance provided for submission to arbitration.

"It is the rule that the powers of the arbitrator are determined by the contract by which the matter is submitted to him. [Citation.]" (*Aetna Cas. & Surety Co.* v. *Superior Court,* 233 Cal.App.2d 333, 337 [43 Cal.Rptr. 476].) As we have indicated, the contract of insurance in this case was limited to the minimum requirements prescribed by section 11580.2; arbitration was provided for disputes respecting only the "determination as to whether the insured . . . is legally entitled to recover . . . damages, and if so the amount thereof." These issues relate to the liability of the uninsured motorist to the insured, not to the amount of money the insurance company must pay (*Fisher* v. *State Farm Mut. Auto Ins. Co.,* 243 Cal.App.2d 749, 751-752 [52 Cal.Rptr. 721]; *Aetna Cas. & Surety Co.* v. *Superior Court, supra,* at p. 337), or to the preliminary question of whether there is a valid and subsisting agreement to arbitrate.

In a proceeding seeking to enforce an arbitration agreement, section 1281.2 of the Code of Civil Procedure specifically provides for a court determination of the question of whether arbitration has been waived by a party otherwise entitled. The section reads in part:

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

"(a) The right to compel arbitration has been waived by the petitioner. . . ."

---

[1]Defendant's demand for arbitration quotes an alleged arbitration agreement in language quite different from what is found in section 11580.2. However, the evidence shows only an insurance policy containing the statutory form of arbitration clause.

As the court succinctly put it in the recent case of *Sawday* v. *Vista Irrigation Dist.*, 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816], "A party to an arbitration agreement can waive his right to arbitrate. [Citations.]" "Waiver is the intentional relinquishment of a known right after knowledge of the facts. [Citations.]" (*Loscalzo* v. *Federal Mut. Ins. Co.*, 228 Cal.App.2d 391, 396 [39 Cal.Rptr. 437].) A release is defined as "The relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced." (Black's Law Dictionary (4th ed.).) It is thus evident that the legal effect of a release is also the relinquishment of rights; in this sense a release is clearly a waiver. Consequently, if the release was valid, defendants have waived their rights to arbitration. Section 1281.2 makes it clear this issue was for the court to decide.

Defendants question the sufficiency of the evidence to support the finding of the court that the release was valid and binding. They argue that Civil Code section 1542 was applicable. Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Under this statute whether an intent existed to release unknown claims is a question of fact which may be decided upon evidence apart from the words of the release. (*Casey* v. *Proctor*, 59 Cal.2d 97, 110 [28 Cal.Rptr. 307, 378 P.2d 579].)

In effect, defendants maintain that the evidence establishes, as a matter of law, that the back injury of Mrs. Copeland was caused by the accident and, that she did not know or suspect such injury existed when the release was signed. We have concluded that this contention lacks merit.

Ample evidence was presented to support the finding that, at the time the release was executed, defendants were aware of the possibility that the automobile accident had caused an injury to Mrs. Copeland's low back.

The only expert testimony respecting the nature and cause of Mrs. Copeland's back trouble came from Dr. Hawkins, an orthopedic specialist. It was to the effect that her back condition would take several years to develop and almost any kind of activity could cause the symptoms or complaints to occur; they could occur without any known specific trauma; and, if

an accident was of sufficient severity to "then and there" cause the injury, he would expect there would be some immediate symptoms.

The evidence also supports the finding that, if the injury to Mrs. Copeland's back was caused by the accident, she was both aware of the injury and that it possibly had resulted from the accident when she signed the release. At that time she had suffered from the back trouble for approximately three months. The pains had begun about one month after the accident. She admitted that, when her back started to hurt and she went to see Dr. Sherwood, she thought it might have been caused by the accident.

The court did not have to accept as true the assertions of defendants that they did not know anything about uninsured motorist coverage and did not intend to release claims under that coverage. The proof of claim form, dated January 23, 1962 (a date two months after Mrs. Copeland indicated she began to have pain in her low back), and the release, both plainly state they have to do with injuries caused by uninsured automobiles. In the proof of claim she described her only injury as being a stiff neck. She admits the signatures on the documents were hers. Further, it was stipulated at the trial that the proof of claim form was partially filled in in her own handwriting. There is no contention that any misrepresentation was involved. From the evidence the court was warranted in concluding that Mrs. Copeland was aware of the possibility that her low back trouble may have been caused by the automobile accident and, knowing of this possibility, she nevertheless intended to release all claims under the uninsured motorist coverage. No more was required for the release to be effective and extend to this claim. (See *Casey* v. *Proctor, supra,* 59 Cal.2d 97.)

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.