[Civ. No. 31738.   Second Dist., Div. One.   Dec. 27, 1967.]

LOUIS R. ESPARZA, Plaintiff and Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Respondent.

Levy, DeRoy, Geffner & Van Bourg and Walter Klein for Plaintiff and Appellant.

Spray, Gould & Bowers and Daniel O. Howard for Defendant and Respondent.

LILLIE, J.—Petitioner appeals from an order denying arbitration under an automobile liability policy containing the uninsured motorist indorsement required by section 11580.2, Insurance Code.[1]

The policy was issued to Clotilda Lechuga as owner, and covered a 1965 Volkswagen. On April 2, 1966, petitioner, appellant herein, was a passenger in the vehicle which was then being operated by one Ernstrom with its owner's consent. The petition alleged that during the course of such operation "a certain red car, travelling in the same direction on the same road, made a sudden lane change" which forced the Volkswagen off the road and against a light pole, causing injuries to petitioner; it was further alleged that the "red car" did not stop at the scene, and petitioner had no knowledge as to the identity of its owner or operator. Thereafter, appellant complied with the policy's provisions respecting notice to the company, a report of the accident to the local police department as well as a written report of the accident to respondent insurer. A subsequent demand for arbitration having been made and declined, an order was then sought to compel such arbitration. It was opposed by respondent upon the ground that the petition failed to set forth an express condition in the policy with regard to coverage, namely, that the bodily injury shall have arisen out of physical contact of such hit-and-run automobile with that in which appellant was riding (Ins. Code, § 11580.2, subd. (b)(1)). Thus under DEFINITIONS—INSURING AGREEMENT III, it is provided as follows: "Hit and Run Automobile—means a land motor vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or owner of such 'hit-and-run automobile' . . . ."

It is appellant's contention that physical contact of the phantom vehicle with the car occupied by the insured becomes immaterial in the absence of any dispute that the accident actually arose in the manner stated by him in his report to the insurer as well as to the police department. He seems to con-

---

[1] We have liberally construed the notice of appeal which is from "the Notice of Denial of Motion in this action," which motion (or petition) was one to compel arbitration; though interlocutory in nature, the order of denial is expressly made appealable by section 1294, subdivision (a), Code of Civil Procedure.

cede that the necessity of such physical contact goes far to prevent the filing of false and fraudulent claims; while also apparently recognizing that the above limitation on recovery was designed to curb any abuses which might arise from this facet of related legislation, he points out that such legislation has been liberally construed to protect persons " 'who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' " (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.,* 58 Cal.2d 142, 153 [23 Cal.Rptr. 592, 373 P.2d 640].) Hence, in *Inter-Insurance Exchange* v. *Lopez,* 238 Cal.App.2d 441 [47 Cal. Rptr. 834], the view was expressed that "the physical contact requirement, designed to prevent false claims, should not be extended to defeat recovery in cases where fraud clearly does not exist." (P. 446.) Unlike our case, however, *Lopez* involved a true hit-and-run situation, the court holding that where an unknown automobile has struck a second vehicle and caused it to strike the insured vehicle, there is physical contact between the unknown vehicle and the insured vehicle even though such contact was only indirect.

The above distinction is pointed out by respondent in its written opposition to the petition; thus, it is alleged that both the policy of insurance and the statute (Ins. Code, § 11580.2) require contact with some object set in motion by the hit-and-run vehicle or, at the very least, some contact with the phantom car. With respect to appellant's claim that there is no possibility of fraud in light of his report of the accident to the police department, respondent argues (quite properly, we think) that any investigation thereafter conducted by that department could not affirmatively prove or disprove, at least with any convincing force, the existence or otherwise of the alleged phantom vehicle at the place and time asserted by appellant.

While our decision in *Page* v. *Insurance Co. of North America* (Nov. 27, 1967) 256 Cal.App.2d 374 [64 Cal.Rptr. 89], supports at least one of the points above urged by respondent,[2] it was a determination of the merits of that controversy; it did not, as here, decide whether either party had the right to compel arbitration of any claims arising under the arbitration clause contained in the policy of insurance. The

---

[2]The *Page* case involved three cars. The third car (a phantom vehicle), while being operated in a direction opposite to that of plaintiff and one Pickell, crossed the center line; to avoid a collision, and before any contact with the phantom vehicle, Pickell drove his car into plaintiff's.

subject policy provides expressly therefor: "15. *Arbitration.* If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator. . . ." Provision is then made for the appointment of a third arbitrator and the binding nature of the decision by two such arbitrators made.

The critical word in the clause above quoted is the first "hereunder," being of necessity applicable to the conditions of the policy one of which is uninsured automobile coverage. Under such a broad agreement to arbitrate the liability of the insurance company to its insured, it has been held that the status of the tortfeasor as an uninsured motorist is an arbitrable issue. (*Jordan* v. *Pacific Auto. Ins. Co.,* 232 Cal.App.2d 127 [42 Cal.Rptr. 556]; see also *Federal Mut. Ins. Co.* v. *Schermerhorn,* 238 Cal.App.2d 900 [48 Cal.Rptr. 325].) (Cf. *Pacific Indem. Co.* v. *Superior Court,* 246 Cal.App.2d 63 [54 Cal.Rptr. 470].) In the *Jordan* case the arbitration agreement in the policy was substantially similar to that at bar, being likewise similar (as noted in the opinion) to that which confronted the court in *Interinsurance Exchange* v. *Bailes,* 219 Cal.App.2d 830 [33 Cal.Rptr. 533], in which case the court also held that the arbitrator had the authority to decide whether the automobile in question was an uninsured vehicle.

■ The decision in *Jordan* was predicated upon the following recognized principles: "General rules relative to arbitration and arbitration agreements and proceedings are provided in section 1280 et seq., Code of Civil Procedure. They reflect the strong legislative policy favoring arbitration. They substantially limit the power of the court over a controversy once it is determined that an agreement to arbitrate exists; thereupon 'an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit' (Code Civ. Proc., § 1281.2). This leaves the entirety of a controversy to the determination of the arbitrator." (P. 132.) ■ In the case at bar, respondent's written opposition admits the existence of a controversy concerning the interpretation to be given the uninsured motorist question; too, although it does not also admit the existence of an agreement to arbitrate, as alleged in the

petition by reference to the policy, it does not formally deny (nor could it do so) that such a commitment had been made.

While respondent does not say so in so many words, it clearly suggests that in light of the assertedly unambiguous definition in the policy of "hit-and-run" automobile, there is no threshold question of arbitrability. The answer to such contention simply is: Why then did it agree to arbitrate such issue? To hold, as respondent apparently contends, that the issue of "noninsurance" is one for the court to decide on a preliminary hearing (such as this) before arbitration can be completed, would (if it has not done so already) deprive the insured of the value of arbitration as a speedy remedy under the prevailing legislation.

Finally, respondent cites a New York case, construing "an almost identical statute," where it is said that the occurrence of physical contact between the hit-and-run vehicle and the automobile insured is a condition precedent to the assertion of a claim to arbitration. In *Jordan,* however, we held that cases from that jurisdiction were not persuasive in view of the statutory law of this state supporting the power of the arbitrator to decide the noninsurance of the other vehi· cle in an "uninsured motorist" claim. (Code Civ. Proc., § 1280 et seq.; Ins. Code, § 11580.2.)

The order (denying arbitration) is reversed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 15, 1968, and respondent's petition for a hearing by the Supreme Court was denied February 21, 1968. Traynor, C. J., and Mosk, J., were of the opinion that the petition should be granted.