[L.A. No. 30386. In Bank. May 30, 1975.]

SIDNEY V. FREEMAN, Plaintiff and Appellant, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Defendant and Respondent.

474

476

**COUNSEL**

Low & Stone, Julian Scheiner and Howard D. Pilch for Plaintiff and Appellant.

Spray, Gould & Bowers, Daniel O. Howard and Edmond D. Wade for Defendant and Respondent.

## OPINION

**THE COURT.**—In this proceeding to compel arbitration under the uninsured motorist provisions of an insurance policy, the issues are (1) whether the application of the statutory time limitation of Insurance Code section 11580.2, subdivision (i), is a matter for the determination of the court when it hears a petition to compel arbitration under Code of Civil Procedure section 1281.2, or whether it is a matter to be determined by the arbitrator, and (2) whether the petition to compel arbitration was timely in this case. After decision by the Court of Appeal, Second Appellate District, Division Four, affirming an order denying the petition to compel arbitration and an order denying reconsideration, we granted a hearing in this court for the purpose of giving further consideration to the issues raised. Having made a thorough examination of the cause, we have concluded that the opinion of the Court of Appeal prepared by Presiding Justice Files and concurred in by Justices Jefferson and Dunn correctly treats and disposes of the issues involved, and we adopt such opinion as and for the opinion of this court. Such opinion (with appropriate deletions and additions) is as follows:*

This is a proceeding to compel arbitration under the uninsured motorist provision of an automobile insurance policy. After a hearing, at which the trial court considered declarations and a portion of a deposition, the court concluded that the petition was barred by the one-year statute of limitations provided in subdivision (i) of Insurance Code section 11580.2.[1] A motion for reconsideration was denied upon the ground that substantially all of the matters asserted therein had been presented at the earlier hearing, or could have been. The petitioner is appealing from the orders denying the petition and the motion for reconsideration.[2][ ]

---

*Brackets together, in this manner [] *without enclosing material,* are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. In so doing, we adhere to a method of adoption employed by us in the past. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311, fn. 2 [70 Cal.Rptr. 849, 444 P.2d 481], and cases there cited.)

[1]Since 1965 this section has been amended in ways not material to our discussion. The subdivision numbers cited are as they appear in the present form of the statute.

[2]Since the motion for reconsideration was made in part upon new grounds, the order denying it is appealable. (See *Farrar* v. *McCormick* (1972) 25 Cal.App.3d 701, 705-706 [102 Cal.Rptr. 190].)

*Historical Facts*

The facts upon which we must act are those set forth in the petition to compel arbitration and the declarations and exhibits submitted to the court for the hearings on the petition and the motion for reconsideration. For the purpose of this appeal we make no distinction between the facts adduced for the hearing on the petition and the additional facts offered by petitioner on his motion for reconsideration.

On December 11, 1965, State Farm issued to plaintiff Freeman an automobile policy which was in effect at all material times, and which included uninsured motorist coverage and an arbitration clause as required by subdivision (f) of section 11580.2. On January 28, 1969, petitioner, while driving his vehicle on the Hollywood Freeway, collided with a vehicle operated by Kenneth Morita. Petitioner's attorney concluded that Morita was legally responsible for the accident. There was correspondence between petitioner's attorney and State Farm about a claim for petitioner's medical expense (which State Farm paid) and whether Morita was uninsured. On or before May 15, 1969, petitioner's attorney learned that Morita had liability insurance coverage by State Farm.

On or before November 19, 1969, petitioner filed a civil action against Morita as named defendant. The complaint also named "Doe" defendants and alleged that "Does I through V" were sued by fictitious names. No other parties defendant were named or identified. State Farm undertook Morita's defense. On March 20, 1970, petitioner's attorney took Morita's deposition, in which he gave his version of the accident.

According to Morita, he was proceeding in the number two lane of the freeway when he saw a pickup truck with a flat tire in the number one lane. Morita applied his brakes and was struck by a convertible driven by a woman behind him. The impact pushed him toward the number three lane, where he and petitioner collided. Morita testified the woman in the convertible stopped after the accident and talked to a policeman, but Morita did not speak with her or learn her license plate number.

Petitioner's case against Morita was tried before a jury and resulted in a judgment upon a verdict for the defendant.

On September 13, 1972, petitioner made his demand for arbitration under the uninsured motorist coverage of his own policy, and on October

19, 1972, commenced this proceeding in the superior court to compel arbitration, as authorized by Code of Civil Procedure section 1281.2.

The statutory time limitation which was the basis of the trial court's decision reads as follows: "No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless within one year from the date of the accident: (1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction, or (2) Agreement as to the amount due under the policy has been concluded, or (3) The insured has formally instituted arbitration proceedings." (Ins. Code, § 11580.2, subd. (i).)

The important threshold question is whether or not the trial court was entitled to consider the time limitation at all. This calls for an examination of the powers and duties of the trial court when confronted with a petition to compel arbitration under an uninsured motorists coverage.

### The judicial function: arbitration generally

■ A proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract. (*Trubowitch* v. *Riverbank Canning Co.* (1947) 30 Cal.2d 335, 347 [182 P.2d 182].)

■ "Arbitration is, of course, a matter of contract, and the parties may freely delineate the area of its application." (*O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 490 [30 Cal.Rptr. 452, 381 P.2d 188].) To this should be added that where a statute requires the contract to provide for certain matters, the statute becomes a part of the contract, imposing an arbitration agreement at least as broad as the statutory specifications. (See *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39-40 [307 P.2d 359].)

Code of Civil Procedure section 1281.2 was drafted by the California Law Revision Commission to prescribe and limit the power of the superior court in passing upon a petition to compel arbitration. (See 3 Cal. Law Revision Com. Rep. (1961) pp. G 6-7 and G 36-37.) That section provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists,

unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement. . . ." (Code Civ. Proc., § 1281.2.)

■ The clear purpose and effect of section 1281.2 is to require the superior court to determine in advance whether there is a duty to arbitrate the controversy which has arisen. The performance of this duty necessarily requires the court to examine and, to a limited extent, construe the underlying agreement.

It is, of course, possible for the parties to agree that the arbitrator may determine the scope of his authority. "The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract." (*McCarroll* v. *L.A. County etc. Carpenters* (1957) 49 Cal.2d 45, 65 [315 P.2d 322].) Even then, it is necessary for the court to examine the contract to ascertain whether the parties "have so provided." (See 6A Corbin on Contracts, § 1444A; cf. *Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045 [82 Cal.Rptr. 249].)

*The judicial function: uninsured motorists*
*arbitration from Aetna to* [] [*Van Tassel*]

The statutory requirement for arbitration of uninsured motorist claims is found in subdivision (f) of section 11580.2, which states: "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. . . ."

■■ Cases which have analyzed and construed this section have pointed out that the word "damages" in this section means the damages which the insured is entitled to recover from the uninsured motorist, and that the statute, read literally, requires arbitration of two issues only: (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of the damages. (*Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333 [43 Cal.Rptr. 476]; *Fisher* v. *State Farm Mut. Auto. Ins. Co.* (1966) 243 Cal.App.2d 749, 751 [52 Cal.Rptr. 721]; *Commercial Ins. Co.* v. *Copeland* (1967) 248 Cal.App.2d 561, 564 [56 Cal.Rptr. 794]; *Pacific Indem. Co.* v. *Superior Court* (1966) 246 Cal.App.2d 63, 67 [54 Cal.Rptr. 470]; *Farmers Ins. Exch.* v. *Ruiz* (1967) 250 Cal.App.2d 741, 744 [59 Cal.Rptr. 13]; *Calhoun* v. *State Farm*

*Mutual Auto. Ins. Co.* (1967) 254 Cal.App.2d 407, 413 [62 Cal.Rptr. 177]; *Campbell* v. *Farmers Ins. Exch.* (1968) 260 Cal.App.2d 105, 110 [67 Cal.Rptr. 175]; *Pacific Automobile Ins. Co.* v. *Lang* (1968) 265 Cal.App.2d 837, 841 [71 Cal.Rptr. 637]; *Allstate Ins. Co.* v. *Shmitka* (1970) 12 Cal.App.3d 59, 62 [90 Cal.Rptr. 399]; *National Indemnity Co.* v. *Superior Court* (1972) 27 Cal.App.3d 345, 349 [103 Cal.Rptr. 606].)

Where the arbitration clause in the insurance policy is broader than the statute, the arbitration of additional issues may be required. Cases involving such arbitration agreements must be distinguished from those which are concerned only with the statutory language. Cases involving those broader clauses include the following: *Fisher* v. *State Farm Mut. Auto. Ins. Co., supra,* 243 Cal.App.2d 749, 751-752; *Farmers Ins. Exch.* v. *Ruiz, supra,* 250 Cal.App.2d 741, 744-745; *Esparza* v. *State Farm Mut. Auto. Ins. Co.* (1967) 257 Cal.App.2d 496 [65 Cal.Rptr. 245]; *Campbell* v. *Farmers Ins. Exch., supra,* 260 Cal.App.2d 105, 110; *American Ins. Co.* v. *Gernand* (1968) 262 Cal.App.2d 300, 302 [68 Cal.Rptr. 810]; *Felner* v. *Meritplan Ins. Co.* (1970) 6 Cal.App.3d 540, 543 [86 Cal.Rptr. 178]. An additional category of cases involved a post-controversy agreement between the parties which consented, expressly or by implication, to an arbitration going beyond the statutory requirement: *Fidelity & Cas. Co.* v. *Dennis* (1964) 229 Cal.App.2d 541 [40 Cal.Rptr. 418]; *Jordan* v. *Pacific Auto. Ins. Co.* (1965) 232 Cal.App.2d 127, 131 [42 Cal.Rptr. 556]; *Hernandez* v. *State Farm Ins. Co.* (1969) 272 Cal.App.2d 255 [77 Cal.Rptr. 196]; *Felner* v. *Meritplan Ins. Co., supra,* 6 Cal.App.3d 540, 544.

Most of the Court of Appeal decisions on arbitrability are reconcilable under their facts, when consideration is given to whether the case involves construction of the statute, interpretation of an insurance policy broader than the statute, or a voluntary submission to broader arbitration. But the language of the opinions is less harmonious. Some of the opinions emphasize a legislative or judicial policy favoring arbitration as a reason for broadening the scope of the issues which the arbitrator may determine. (See, e.g., *Jordan* v. *Pacific Auto. Ins. Co., supra,* 232 Cal.App.2d 127, 132; *Felner* v. *Meritplan Ins. Co., supra,* 6 Cal.App.3d 540, 546.) That kind of emphasis, where the court has found an agreement to arbitrate, is most appropriate. But out of context it is subject to misinterpretation. ■ There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable.

[] *Orpustan* v. *State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988 [103 Cal.Rptr. 919, 500 P.2d 1119], [] was an appeal from a judgment of the superior court refusing to compel arbitration. The insurer's objection to arbitration was that plaintiff had not shown any physical contact between plaintiff's vehicle and that of the uninsured motorist, whose identity was unknown. Insurance Code section 11580.2, subdivision (b), defining uninsured motor vehicle, contains a proviso that with respect to a vehicle whose owner or operator is unknown, coverage applies only if the bodily injury has arisen out of the physical contact of the vehicles.

The arbitration clause in *Orpustan's* policy provided that if the parties did "not agree as to the amount payable hereunder," the arbitrators were to "hear and determine the question or questions so in dispute." Some earlier Court of Appeal decisions had construed similar language as an agreement to arbitrate the physical contact issue. (*Felner* v. *Meritplan Ins. Co., supra,* 6 Cal.App.3d 540; *American Ins. Co.* v. *Gernand, supra,* 262 Cal.App.2d 300, 302; cf. *Esparza* v. *State Farm Mut. Auto. Ins. Co., supra,* 257 Cal.App.2d 496; contra, *Pacific Automobile Ins. Co.* v. *Lang, supra,* 265 Cal.App.2d 837.)

Thus, the holding of *Orpustan,* based upon the language of the insurance policy, is fully consistent with the antecedent [] decisions which required the parties to arbitrate those controversies which they had agreed to arbitrate. [However, our opinion also contained certain broad, general language to the effect that "the entirety of the controversy," including what we there termed "jurisdictional facts," was subject to the determination of the arbitrator. (7 Cal.3d at pp. 991-992; see also *Felner* v. *Meritplan Ins. Co., supra,* 6 Cal.App.3d 540, 546-547.) This language was subsequently relied upon by us in the case of *Van Tassel* v. *Superior Court* (1974) 12 Cal.3d 624 [116 Cal.Rptr. 505, 526 P.2d 969], where we held that the issue there in question—whether the decedent came within the policy's definition of "insured"—involved a determination of "jurisdictional facts" and should therefore be submitted to the arbitrator. Now, in the case before us, we are asked to again apply the broad language of *Orpustan* and hold that the application of the one-year statutory time limitation of Insurance Code section 11580.2, subdivision (i), as another issue involving "jurisdictional facts," is also subject to determination by the arbitrator. This we decline to do.]

### Cases involving the one-year statute

Prior to *Orpustan,* the Courts of Appeal were unanimous in holding that the application of the one-year statutory time limit was an issue for

the court. These cases are: *State Farm etc. Ins. Co.* v. *Superior Court* (1965) 232 Cal.App.2d 808 [43 Cal.Rptr. 209]; *Aetna Cas. & Surety Co.* v. *Superior Court, supra,* 233 Cal.App.2d 333; *Pacific Indem. Co.* v. *Superior Court, supra,* 246 Cal.App.2d 63; *Republic Indem. Co.* v. *Barn Furniture Mart, Inc.* (1967) 248 Cal.App.2d 517 [56 Cal.Rptr. 609]; *Key Ins. Exch.* v. *Biagini* (1967) 250 Cal.App.2d 143 [58 Cal.Rptr. 408]; *Calhoun* v. *State Farm Mutual Auto. Ins. Co., supra,* 254 Cal.App.2d 407, 413; *Firemen's Ins. Co.* v. *Diskin* (1967) 255 Cal.App.2d 502 [63 Cal.Rptr. 177]; *Allstate Ins. Co.* v. *Orlando* (1968) 262 Cal.App.2d 858 [69 Cal.Rptr. 702]; *Pacific Indem. Co.* v. *Ornellas* (1969) 269 Cal.App.2d 875 [75 Cal.Rptr. 608].

The *Aetna* case, *supra,* explains the reasons why the application of the one-year statute is an issue for the court:

First, it is consistent with the previously established rule that where a contract provides that arbitration may be demanded within a stated time, failure to make demand within that time constitutes a waiver of the right to arbitrate. (*Jordan* v. *Friedman* (1946) 72 Cal.App.2d 726, 727 [165 P.2d 728]; see 3 Cal. Law Revision Com. Rep. (1961) pp. G 7 and G 36.)

Second: Code of Civil Procedure section 1281.2 requires the court to determine whether a party has waived his right to arbitrate. (See *Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833 [52 Cal.Rptr. 1, 415 P.2d 816].)

Third: Insurance Code section 11580.2 provides in subdivision (i) that "No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section" unless one of the specified steps is taken within one year from the date of the accident. The *Aetna* opinion points out: "It should not be overlooked that a determination of this issue of waiver (or compliance with conditions precedent, whichever it be called) may be very different if it is tried before an arbitrator rather than a court. A court determines the facts upon the weight of competent evidence, and applies the law as it is laid down by the authorities. Arbitrators, on the other hand, 'may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' (*Sapp* v. *Barenfeld,* 34 Cal.2d 515, 523 [212 P.2d 233].) Thus, what an arbitrator would find to be compliance could be something other than compliance as measured by the standards of the law.

"Subdivision (h) [now subdivision (i)] is, in effect, a statute of limitations. Such statutes are intended to set controversies at rest by foreclosing consideration thereafter as to the merits of the claim. To reject a strict application of the law in favor of 'broad principles of justice and equity' would make a statute of limitation meaningless." (*Aetna Cas. & Surety Co.* v. *Superior Court, supra,* 233 Cal.App.2d 333 at pp. 339-340.)

In *Pacific Indem. Co.* v. *Superior Court, supra,* the appellate court issued a writ of mandate commanding the superior court to enjoin an arbitration commenced more than one year after the accident. The opinion [] reviewed the reasoning of the *Aetna* case, and stated: "This conclusion, we think, promotes the fundamental plan and purpose of the statute. The issue of the statute of limitations is not one of the arbitrable issues having to do with the liability of the *uninsured motorist* to the *insured* but relates directly to the liability or obligation of the *insurer* to the *insured* under the policy and pertinent statute. (§ 11580.2, subds. (a), (e), (h); see *Aetna Cas. & Surety Co.* v. *Superior Court, supra,* 233 Cal.App.2d 333, 337; *Fisher* v. *State Farm Mut. Auto. Ins. Co.* (1966) 243 Cal.App.2d 749, 751-752 [52 Cal.Rptr. 721].) Furthermore our conclusion appears to be in harmony with Code of Civil Procedure section 1281.2 which provides for an order by the court compelling arbitration 'if it [the court] determines that an agreement to arbitrate the controversy exists, *unless it determines that: (a) The right to compel arbitration has been waived* by the petitioner; . . .' (Italics added.)" (246 Cal.App.2d 63, 67-68.)

The single case which holds to the contrary is *Allstate Ins. Co.* v. *Superior Court* (1973) 35 Cal.App.3d 137 [110 Cal.Rptr. 622]. That was a proceeding to restrain the superior court from permitting an arbitration which had been demanded almost eight years after the accident. The appellate court denied relief upon the theory that *Aetna Cas. & Surety Co.* v. *Superior Court* had been overruled by *Orpustan* v. *State Farm Mut. Auto. Ins. Co., supra,* 7 Cal.3d 988. The result of the *Allstate* decision was, as the court acknowledged, to allow the arbitrator to decide whether eight years of delay amounted to a waiver. That holding takes away from the trial court the responsibility which the Legislature gave it to determine whether the right to compel arbitration had been waived. Under the *Allstate* decision, the legislative mandate that "no cause of action shall accrue . . . unless within one year from the date of the accident . . ." is reduced to a precatory gesture which the arbitrator is free to disregard, by substituting his own concept of "justice and equity."

The *Allstate* decision was not based upon anything in the insurance policy or any agreement of the parties to submit the timeliness issue to arbitration. The decision appears to have been based solely upon the court's belief that under *Orpustan* the "entirety of the controversy" is to be arbitrated, statutes to the contrary notwithstanding.

[] [Our *Orpustan* decision did not involve the statutory time limitation of section 11580.2, subdivision (i), of the Insurance Code. As we have indicated, the relevant terms of the policy there in question amounted to an agreement to arbitrate the issue of physical contact, and our narrow holding was that those terms were to be honored.][3] [Unfortunately, our holding was stated in language whose breadth was an invitation to misinterpretation, and the *Allstate* court, in applying that language to the issue presently before the court, accepted that invitation. We here must correct that misinterpretation.

■ The issue of whether the right to compel arbitration has been waived by failure to comply with the one-year limitation is clearly one for the determination of the court pursuant to the provisions of section 1281.2 of the Code of Civil Procedure. This issue, as opposed to others which we loosely and unfortunately termed "jurisdictional" in *Orpustan* and in our later *Van Tassel* decision, is logically and legally prior to any consideration by the arbitrator of those other issues which, in the circumstances of the particular case, are a part of "the entirety of the controversy" and whose determination may have the effect of precluding him from reaching the merits of the dispute. It was in this latter sense that we used the term "jurisdictional" in describing those other issues—i.e., in the sense that the arbitrator's consideration of the merits of the controversy must await his determination of them. In using this terminology, however, we in no way intended to indicate that the prior issue of waiver of the right to compel arbitration, which under the relevant statutes and the long line of decisions we have adverted to is a matter for the determination of the court upon a motion to compel arbitration, was to be swept along with those other issues into the area of arbitrative determination. While as we indicated in *Orpustan* and *Van Tassel* we favor full and complete determination by the arbitrator of matters properly submitted to him, we cannot allow our enthusiasm for the expeditious and economical disposition of such matters to intrude

---

[3]We are aware that in *State Farm Mut. Auto. Ins. Co.* v. *Guleserian* (1972) 28 Cal.App.3d 397, 402 [104 Cal.Rptr. 683], the court seemed to say that *Orpustan* was decided upon an interpretation of subdivision (f) of Insurance Code section 11580.2. [] The language quoted above indicates *Orpustan* was an interpretation of the insurance policy.

upon our responsibility to determine whether the right to compel arbitration has been waived through failure to seek it in a timely manner.

Finally, we recognize that in our opinion in *Van Tassel* v. *Superior Court, supra,* 12 Cal.3d 624, we quoted certain language from *Allstate* with approval and disapproved certain contrary language in *Aetna Cas. & Surety Co.* v. *Superior Court, supra,* 233 Cal.App.2d 333. However, the issue here before the court was not involved in *Van Tassel,* and in light of our decision today the indicated quotations and citations cannot be construed to support the overly broad reading of *Orpustan* and *Van Tassel* which petitioner has urged upon us.

The case of *Allstate Ins. Co.* v. *Superior Court, supra,* 35 Cal.App.3d 137, is disapproved.]

### *Application to the present case*

The only portion of petitioner's insurance policy which is in the record is the arbitration clause which reads as follows: "If any person making claim under coverage U and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury to the insured, or do not agree as to the amount payable hereunder, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the provisions of the California statutes pertaining to arbitration and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof . . . ."

The language of this clause is similar to that which was interpreted in *Orpustan* v. *State Farm, supra,* and thus should be held to require arbitration of the physical contact issue and possibly other issues beyond the liability of the uninsured motorist to the insured. But there is nothing in this arbitration clause which should be construed as an agreement to arbitrate a claim not asserted within the time limit specified in Insurance Code section 11580.2, subdivision (i). The pertinent language in that subdivision is "No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless within one year from the date of the accident . . . ." That phrase "cause of action" in that subdivision must have been intended to cover a proceeding to compel arbitration since that is the judicial proceeding which is the proper means of enforcing a policyholder's rights under that

section. ■ Clearly the Legislature has prescribed the one-year time limitation as a limitation upon the right to obtain an order of the superior court compelling arbitration.

### Theories for tolling the statute

Petitioner has argued several theories for avoiding the effect of the one-year statute in this case. ■ The first is "Filing suit against fictitious defendants tolled the statute of limitations. . . ." The record shows that an amended complaint, filed November 19, 1969, in the case of Freeman v. Morita, named "Does I through V" as defendants whose true names were unknown to plaintiffs. There is no showing that any of the Does was ever served or ever appeared or that the complaint was amended to identify any of them as a real person. The case was tried and a judgment entered against petitioner in August 1972.

■ The law is liberal in permitting a plaintiff to substitute an identified person for a fictitious name while a case is pending, in which event the person so identified is deemed to have been a party from the beginning. (See *Garrett* v. *Crown Coach Corp.* (1968) 259 Cal.App.2d 647 [66 Cal.Rptr. 590].) ■ But there is no authority for the effect which petitioner asks us to conjure from the fact that fictitious names had been listed in a complaint. If petitioner had amended his complaint to refer to the owner or operator of the convertible[4] in any way, or if, before the Morita trial, petitioner had informed State Farm that he intended to assert an uninsured motorist's claim by reason of the negligence of the owner or operator of the convertible, we might have an entirely different issue here. What we do have is a hindsight effort to claim that the Morita complaint was something which it was not.

■ Petitioner's second contention is that State Farm "is estopped from asserting the statute of limitations where it has breached the duty of good faith and fair dealing owed to insured." The short answer is that there is no showing of any breach. There is no evidence in the record that State Farm at any time had any material information which it withheld from petitioner. There is no showing that petitioner ever sought any information from State Farm after petitioner learned that State Farm insured Morita, or that State Farm ever influenced petitioner by

---

[4]The vehicle which, according to Morita, struck his truck, is referred to in petitioner's brief by the inappropriate word "phantom." A phantom is an illusion which appears real but is not. Since Morita testified that a "convertible" struck him, we use that word.

words, acts or omissions.[5] There is no evidence that the insurer was aware that Morita would say a convertible had struck him until Morita so testified in the presence of petitioner's attorney. The trial court was entitled to interpret the discussion between petitioner and the insurer in early 1969, regarding uninsured motorist coverage, as having related entirely to the possibility that Morita was uninsured. Once it had been determined that Morita had coverage, petitioner gave no hint that he was thinking of asserting a claim under his uninsured motorists coverage, so far as the record shows. It is, of course, true that State Farm found itself in a position of potentially conflicting duties when a contested claim arose between two of its insured, but there is nothing in the record which would require the trial court to find that State Farm obtained any advantage thereby.

Petitioner asserts "The jury found for Morita on the ground that a 'phantom' automobile pushed defendant's car into petitioner." There is no basis for that statement. All that has been shown is that the jury returned a verdict in favor of Morita and against petitioner.

Petitioner's argument on breach of a duty of good faith is grounded wholly upon assumptions which are unsupported by the record made in the trial court.

■ Petitioner's final contention is that the court should apply here the principle that, when an injured party has several legal remedies, the statute of limitations does not run on one while he is pursuing the other. (See *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 634 [86 Cal.Rptr. 198], and cases cited.) None of the authorities cited have applied that rule to extend the time limit for demanding uninsured motorists arbitration. If, for the sake of preliminary analysis, we disregard the fact that State Farm was also Morita's insurer, it is clear that petitioner's theory cannot be reconciled with Insurance Code section 11580.2. Subdivision (i) of the statute provides that if the insured commences an action against the wrongdoer within a year, the time limit for demanding arbitration is extended. Subdivision (c) provides there shall be no coverage if the insured shall "without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor."

---

[5]The record shows that on March 9, 1969, a representative of State Farm sent petitioner's attorney a letter in which he said "We will keep you advised and, of course, my file is open to you." There is no showing what, if any, action was taken by either party pursuant to that statement.

To a limited extent section 11580.2 is consistent with the "several legal remedies" principle of the *Myers* case. The pendency of the civil action extends the time for making a claim under the uninsured motorists coverage. But the statute also notifies the insured that if, without the consent of the insurer, he prosecutes his action to judgment, there shall be no coverage.

There is no provision at all in section 11580.2 for extending time while the insured pursues the alleged liability of someone other than an uninsured motorist. Section 11580.2 cannot reasonably be construed to mean that if the insured sues A for his bodily injuries and loses, his right to assert a claim based upon the alleged negligence of B is extended during the litigation against A. A and B being joint tortfeasors, jointly and severally liable, may be sued in the same action. And there is no reason in law or good practice to encourage the injured party to litigate against them seriatim.

In *Myers* v. *County of Orange, supra,* the plaintiff had alternative remedies, and the election to proceed first on one of them was an orderly and practical choice. But the uninsured motorists statute not only requires something to be done within the year, it also provides a convenient means by which the injured party may assert and preserve all of his remedies by proceeding within the year.[6]

A recent application of the "several legal remedies" principle is found in *Elkins* v. *Derby,* 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81], where an injured person first sought workmen's compensation upon the theory that the defendant was his employer and then, after the compensation board had determined there had been no employment, brought a civil action against the defendant. In holding that the statute of limitations for the civil action was tolled while the plaintiff was seeking workmen's compensation, the court pointed out that the two kinds of proceedings required the plaintiff to take inconsistent positions, and that requiring him to pursue the two concurrently in different tribunals would result in "an awkward duplication of procedures."

Nothing of that kind can be said for one who believes two persons may have been responsible, jointly or alternatively, for his injury in an automobile collision.

---

[6]We have not forgotten that petitioner says that during the year following his injury he was unaware that the convertible had been involved. The *Myers* "several remedies" rule *is not intended as a cure for that problem.* The "several remedies" principle has been applied when a litigant has made a rational decision to pursue one remedy before attempting the alternative.

It is tempting to assume that, since State Farm also covered Morita, the action of Freeman v. Morita and the proposed arbitration were just two aspects of the same claim. But that simplistic approach will not stand analysis. They were two distinct claims, one based upon the alleged wrong of Morita and the other based upon the alleged wrong of the driver of the convertible. There was no inconsistency in charging both with having caused petitioner's injury. The fact that Morita was also insured by State Farm created no impediment to petitioner's proceeding against Morita and the other alleged tortfeasors jointly, severally, concurrently or serially, as he saw fit, subject to the applicable statutory time limitations.

Where uninsured motorists coverage is involved, subdivision (k) of section 11580.2 gives further protection against the bar of the statute of limitations. Under that subdivision, the insured need only make a timely claim against his insurer, who then has the burden of notifying the insured in writing 30 days before the expiration of the time limit.[7] Thus, if the insured merely presents a timely claim to his insurer, the period of limitations is extended indefinitely until the insurer, by giving notice, forces the claim into litigation. It is thus apparent that the thrust of the statute is not to force "awkward duplication of procedures," but to require the insured merely to give the insurer prompt notice of what he is claiming.

The position of State Farm would have been quite different in at least two respects had petitioner, before the trial of the Morita case, advised State Farm of his intention to seek damages based upon the alleged liability of the owner and operator of the convertible. First: State Farm would have had a special reason to seek out the owner and operator of the convertible to determine whether they had insurance coverage. If investigation showed they had coverage, State Farm would have been relieved of uninsured motorists coverage; and had petitioner then seen fit to include those parties (who had insurance) as fictitiously named

[7]Section 11580.2, subdivision (k): "Notwithstanding the provisions of subdivision (i), any insurer whose insured has made a claim under his or her uninsured motorist coverage, and such claim is pending, shall, at least 30 days before the expiration of the applicable statute of limitation, notify its insured in writing of the statute of limitation applicable to such injury or death. Failure of the insurer to provide such written notice shall operate to toll any applicable statute of limitation or other time limitation for a period of 30 days from the date such written notice is actually given."

This subdivision became effective November 10, 1969, which was after petitioner's cause of action had arisen. The trial court held that subdivision (k) was applicable to petitioner, but correctly decided it was immaterial because petitioner had not made a timely claim.

defendants in the Morita suit, State Farm would have had the benefit of a potential joint tortfeasor to share a possible adverse judgment or settlement.

Second: If timely investigation had shown that the convertible was uninsured, State Farm, knowing of its possible liability under uninsured motorists coverage, might have been amenable to a settlement with petitioner which would have saved both parties the expense of a trial.

We do not point out these things to show that State Farm was prejudiced, or to presume prejudice. These matters are mentioned to demonstrate that the situation presented was not a simple case where petitioner was necessarily entitled to recover from State Farm in one proceeding or the other, and where it mattered not that the second one was beyond the statutory time limit.

The trial court correctly held that the petition was untimely. The order denying the petition to compel arbitration and the order denying reconsideration are affirmed.