M. Ashley ALBRIGHT, Petitioner,

v.

Duane K. McDERMOND, Denise M. Klimas, and Vicki Manton, Respondents.

No. 99SC823.

Supreme Court of Colorado, En Banc.

Nov. 14, 2000.

M. Ashley Albright, Denver, CO, pro se.

James Black, Denver, CO, Attorney for Respondents Duane K. McDermond and Denise M. Klimas.

Burg, Simpson, Eldredge & Hersch, P.C., Tiffanie D. Stasiak, Denver, CO, Attorney for Respondent Vicki Manton.

Alan J. Gilbert, Solicitor General, Denver, CO, Attorney for Amicus Curiae, Colorado Real Estate Commission.

Rothgerber, Johnson & Lyons LLP, Richard K. Clark, Christopher T. Sullivan, Denver, CO, Attorneys for Amicus Curiae, Colorado Association of Realtors.

Justice HOBBS delivered the Opinion of the Court.

Pursuant to section 13–6–310(4), 5 C.R.S. (2000), and C.A.R. 49(a)(1), we granted certiorari to review the judgment of the District Court for the City and County of Denver (District Court) affirming a decision of the County Court for the City and County of Denver (County Court).[1] The underlying dispute is between Buyers and Seller of a home regarding their rights and duties under the Inspection Provision of the "Residential Contract to Buy and Sell Real Estate" (contract No. CBS 1/M–7–96) (Contract)[2] promulgated by the Colorado Real Estate Commission (Commission). The District Court held that the County Court correctly ordered return of the earnest money deposit of Duane K. McDermond and Denise M. Klimas (Buyers), because they did not reach agreement with M. Ashley Albright (Seller) regarding resolution of inspection objections; consequently, the Contract terminated in accordance with its terms. We affirm the judgment of the District Court upholding the judgment of the County Court.

I.

On December 6, 1998, Buyers viewed Seller's residence in Denver's Park Hill neighborhood. Buyers placed a bid of $230,000 on the property after another prospective purchaser had placed a bid of $225,000. Seller took the higher bid and executed a contract with Buyers dated December 6, 1998. The parties utilized form No. CBS 1/M–7–96, which the Commission promulgated pursuant to its statutory authority. See § 12–61–803(4), 4 C.R.S. (2000). Paragraph 10 of the Contract (Inspection Provision) recited:

INSPECTION. Seller agrees to provide Buyer on or before [December] 13, 1998, with a Seller's Property Disclosure form completed by Seller to the best of Seller's current actual knowledge. Buyer or any designee, shall have the *right to have inspection(s)* of the physical condition of the Property and Inclusions, at Buyer's expense. If written notice of any unsatisfactory condition, signed by or on behalf of Buyer, is not received by Seller on or

---

1. The issues for review are: (1) "Whether the district court erred when it denied contract formation and enforceability despite satisfied elements of formation by stating that conditions subsequent to formation and precedent to closing were failed 'contingencies' that prevented the contract from becoming 'final' "; and (2) "Whether the district court erred by abrogating the contract."

2. Form CBS 1–9–99 has replaced this form; its inspection provision contains similar language. The new form provides, however, that: (1) Buyer may notify Seller in writing that the contract is terminated, as an alternative to providing a notice to correct the physical conditions, when Buyer determines the physical conditions to be "unsatisfactory in Buyer's subjective discretion" and (2) the contract terminates one day after the Resolution Deadline if the parties have not reached a written agreement.

before [December 16], 1998 (Objection Deadline), the physical condition of the Property and Inclusions shall be deemed to be satisfactory to Buyer. *If such notice is received by Seller as set forth above, and if Buyer and Seller have not agreed, in writing, to a settlement thereof on or before [December 17], 1998 (Resolution Deadline), this Contract shall terminate three calendar days following the Resolution Deadline;* unless, within the three calendar days, Seller receives written notice from Buyer waiving objection to any unsatisfactory condition. Buyer is responsible for and shall pay for any damage which occurs to the Property and Inclusions as a result of such inspection.

(Emphasis added.) Initially, the parties specified an Objection Deadline of December 14, 1998, and a Resolution Deadline of December 15, 1998. The parties mutually agreed to extend the Objection Deadline to December 16 and the Resolution Deadline to December 17.

The Contract specified a closing date of December 31, 1998, and an earnest money deposit of $4,000.00 to be held in trust by Seller's real estate agent. The Contract included a liquidated damages provision (paragraph 18(a)(2)), providing for forfeiture of Buyers' earnest money deposit to Seller, as her sole and only remedy, in the event of Buyers' breach.

Pursuant to the Inspection Provision, Buyers hired an inspector, inspected the property, and timely presented Seller with inspection objections. By means of an Inspection Release Addendum they proposed before the Objection Deadline of December 16, Buyers listed ten conditions they deemed unsatisfactory.[3] Buyers' addendum proposed that Seller remedy these ten items prior to closing at her expense, through use of licensed contractors, in conformance with codes, and subject to a walk-through one day prior to closing to verify completion of the work:

Pursuant to Paragraph 10 of the Contract, Buyer has conducted inspection(s) of the Property and has identified certain conditions that do not meet with approval of the Buyer. *Provided the Seller agrees to arrange for and pay the cost of having the following work (Work) performed at the Property, the Buyer agrees to release and waive any objection to the Property and to hold the Contract in full force and effect.* Work is to be performed by licensed contractor(s) in a workmanlike manner and shall meet code requirements when applicable. Seller agrees to deliver to Buyer, on date of closing, following successful transfer of deed, any and all warranties and/or guarantees that may be provided to Seller as a result of having the Work performed. *Buyer shall have the right to walk-through the Property not later than one (1) day prior to date of closing, at a mutually agreeable time, to verify completion of the Work as agreed.*

(Emphasis added.)

The trial court found that Seller's agent informed Buyers' agent on December 14, and again on December 15, that Seller was "[n]ot interested in doing the work prior to closing." Buyers' agent responded that Buyers "expected all repairs to be done at the seller's expense and before closing."

On December 16, several exchanges occurred. Instead of signing Buyers' proposed

---

3. The ten items were:

1. Have laundry sink drain and main house drain professionally "roto rooted" to the street;
2. Properly vent kitchen drain to the exterior of home;
3. Have electrician correct multiple tapping at electrical box and correct sub main kill. The kitchen outlet is an open ground and needs to become a GFI plug;
4. The radiator valves are painted in place and need to be made operable/adjustable and any leaks repaired;

5. [R]eplace garage roof (and decking as necessary) with T-lock composition shingles. [A]cquire a 20 year warranty w/roof replacement;
6. [R]epair roof flashing at front window dormer and water heater chimney;
7. [R]eplace gutters on house and install gutters on garage;
8. [S]ecure loose bricks on both chimneys and on exterior of house;
9. [T]uck point to repair "deteriorated/eroded" mortar on exterior structure;
10. [P]aint is peeling on siding and trim/bare wood is exposed—paint bare wood to match current exterior color.

Inspection Release Addendum, Seller wrote on its face that:

Seller accepts conditions 1–10 with the following notes: 1) I have obtained estimates in the minimum of $2835 and maximum of $3600. *I will escrow $4500 with whomever out of closing proceeds & will have the work done after closing;* & 2) while not a requirement, I would prefer a closing date of 12/21. That will allow me more time to get the work done.

(Emphasis added.) Seller accompanied this writing with a letter providing additional details about her proposed terms.

Also on the 16th, Buyers provided Seller with an additional Inspection Release Addendum, stating that:

Due to lack of agreement of seller & buyer to prior inspection addendum the contract has failed under paragraph 10. Buyers request release of earnest money. See attached earnest money release addendum.

The earnest money Mutual Release Agreement that Buyers proposed to Seller recited that the parties mutually agreed to terminate the Contract with return of the $4,000.00 earnest money deposit to Buyers. Seller did not execute this release. Finally, Buyers' agent faxed to Seller's agent a handwritten note, reciting that: "As we discussed at 5:00 the buyers don't want to accept [Seller's] proposal of $4,500 as just faxed to me." Although the parties disputed at trial the exact timing of sending and receiving of these documents dated December 16, the County Court found that these instruments and the testimony of witnesses nevertheless demonstrated that the parties did not reach agreement for resolution of the inspection objections by the Resolution Deadline.

On December 17, prior to the close of the Resolution Deadline under the Contract, Buyers entered into a contract for purchase of a house they had viewed prior to entering their bid on Seller's house. On December 18, Seller entered into a contract for sale of her house to the previous prospective purchaser whom the Buyers had outbid. De-

claring the occurrence of a material breach, Seller refused to authorize the release of the $4,000.00 earnest money deposit to Buyers. Buyers' agent took the position on behalf of her clients that: (1) Seller had refused to agree to Buyers' terms; and (2) Buyers could terminate the contract for any or no reason.[4]

Buyers brought suit in Small Claims Court for return of their $4,000.00 earnest money deposit. Seller counter-claimed for damages and filed a separate suit against Buyers' agent for tortious interference with contract. By agreement of the parties, the Small Claims Court transferred the suits to the County Court for joint trial.

The County Court found that Buyers and Seller had not reached agreement under the Inspection Provision, and that, consequently, Buyers were entitled to return of their earnest money deposit. The County Court also found that Buyers' agent had not committed tortious interference with the contract by assisting Buyers in entering the contract for purchase of a different house before the Resolution Deadline. In addition to costs against Seller, the County Court awarded attorney's fees (1) to Buyers under the attorney's fees provision of the Contract; and (2) to Buyers' agent because Seller filed and pursued a frivolous and vexatious claim.

Pursuant to section 13–6–310(1), 5 C.R.S. (2000), Seller appealed to the District Court, which affirmed the judgment of the County Court, reciting, in part:

The record supports the County Court's finding that "there never was any agreement" and, therefore, the $4,000 should have been returned to the appellees.... There was an offer from the appellees that the repairs be made prior to closing and there was a counter-offer from the appellant that the repairs be made subsequent to closing. As a result, there was no final agreement and the appellees were entitled to their $4,000 deposit.

The District Court upheld the County Court's order (1) returning the earnest mon-

---

4. In a December 17 fax to Seller's agent, Buyers' agent stated that "buyers *can* terminate for *any* reason." (Emphasis in original.) This was not a correct statement. Rather, the Contract termi-

nated by its terms if, after no timely agreement was reached regarding inspection objections, Buyers declined to waive such objections.

ey to Buyers; (2) dismissing Seller's counterclaim against Buyers for damages; (3) dismissing Seller's claim against Buyers' agent for tortious interference with contract; and (4) awarding attorney's fees against Seller.

In reviewing the record on appeal, we disagree with Seller's characterization that the District Court determined that the existence of a contingency prevented contract formation in the first instance. Read as a whole, the District Court's ruling plainly rests on the Contract's Inspection Provision, particularly its termination clause:

[A]ppellees identified the unsatisfactory conditions and requested the repairs prior to closing the sale of the residence. The appellant counter-offered with the provision that the repairs would be made subsequent to closing. Since there was no final agreement on this issue and no settlement of the conditions, the contract agreement terminated.

*McDermond v. Albright,* No. 99CV3559, Slip op. at 2 (Denver Dist. Ct., Sept. 28, 1999) (citations omitted).

Accordingly, we must determine whether the Seller or Buyers are entitled to the $4,000.00 earnest money deposit. In doing so, we must construe the Inspection Provision and decide, based on the record and the County Court's findings, whether Buyers breached the Contract. Not before us are the County Court's dismissal of Seller's claim for tortious interference with contract against Buyers' agent and the County Court's award of attorney's fees against Seller to Buyers and Buyers' agent.[5]

## II.

We hold that Buyers and Seller did not reach agreement on the resolution of Buyers' timely inspection objections under the Inspection Provision of the Contract. Consequently, the Contract terminated under its terms and Buyers are entitled to return of their earnest money deposit.

### A. The Inspection Provision

■ In reviewing a breach of contract case, we defer to the trial court's findings of fact if the record supports them, and we review its conclusions of law de novo. *See Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373, 376 (Colo.2000); *Mesa County Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1204 (Colo.2000); *I.M.A., Inc., v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 887 (Colo.1986).

■ A court's primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract. *See Ad Two,* 9 P.3d at 376. A trial court takes evidence regarding the intent and meaning of a contract only in the event of a material term's ambiguity, whereas "[w]ritten contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *Id.*

Here, the Seller and Buyers entered into a residential real estate contract on a Commission-promulgated form. The General Assembly gave the Commission the authority to promulgate rules, consider licensing and examination matters, provide educational materials, review complaints, and take disciplinary action against licensees.[6] *See, e.g.,* §§ 12–61–104(1), –108 to –110.5, –113 to –114, –406, –706 to –710, –803(4), 4 C.R.S. (2000); Colo. Real Estate Comm'n, *Real Estate Manual* 1–2 to 1–4 (2000).

Protection of the public is a primary Commission purpose. *See* § 12–61–102, 4 C.R.S. (2000); Colo. Real Estate Comm'n, *Real Estate Manual* 1–3 (2000). To further this purpose, agents must use the Commission's

---

5. We decided not to take the following issue posited by Seller on certiorari:

Whether the district court erred by ignoring uncontested facts that demonstrated Buyers' breach of contract prior to the time conditions precedent to closing could occur, and agent's intentional interference with contract, all without legal justification.

Likewise, we denied certiorari on Buyers' cross-petition issue:

Whether the district court erred in failing to award attorney fees to the defendant after it decided that the plaintiff's appeal was groundless and frivolous.

6. The Commission's web page can be accessed at <www.dora.state.co .us/Real-Estate/>.

standardized forms.[7] These forms set forth the basic contractual rights and remedies for Buyers and Sellers of real property in Colorado. *See* § 12–61–803(4); Colo. Real Estate Comm'n, *Real Estate Manual* 25–1 (2000).

In 1989, the Commission added an Inspection Provision to the standard residential real estate form to replace agents' prior practice of inserting their own choice of inspection language. This provision, which the Commission has adjusted from time to time, allows Buyers to inspect, object to, and obtain resolution of their objections concerning the physical condition of the contracted property and inclusions, and in the absence of such resolution, trigger termination of the Contract. *See* Kent Jay Levine et al., *Guidebook to Colorado Real Estate Contracts & Disclosures* 72 (2d ed.1995).

Pursuant to the Contract, the Seller supplies Buyer with a copy of Seller's Property Disclosure form. Buyer then has the right to inspect the property and the inclusions. The Objection Deadline is the time by which Buyer must supply written objections to Seller listing the physical conditions of the property or inclusions that are unsatisfactory to Buyer. In the event of no timely written objection, Buyer accepts the physical condition of the property and inclusions. In the event of timely written objection, the parties then have until the Resolution Deadline to reach a written agreement satisfying Buyer's concerns. If the parties reach agreement, they sign an addendum that describes that agreement. If they cannot reach agreement, the Contract terminates three calendar days after the Resolution Deadline, unless Buyer waives the objection. If Buyer withdraws the objection, Seller remains under an obligation to sell to Buyer under the contract terms.

A commentator observes that the Inspection Provision allows Buyer to exercise his or her own discretion in determining whether the physical condition of the property and inclusions is unsatisfactory, thereby triggering termination in absence of reaching agreement:

> Unlike prior approved forms, the current [Commission] Forms contain an inspection provision whereunder the buyer can terminate the contract if the buyer identifies any unsatisfactory physical condition, and the buyer and seller do not reach written agreement in settlement of the condition.

2 Cathy Stricklin Krendl, *Colorado Methods of Practice* 92 (4th ed.1998).[8]

Upon review of the Contract, we read the Inspection Provision as providing that: (1) if Seller did not agree to the Buyers' timely inspection objection proposal made before the Objection Deadline; and (2) the parties did not reach an alternate accommodation by the Resolution Deadline; then (3) the Contract terminated three days after the Resolution Deadline unless (4) the Buyers withdrew their objections. Additionally, an implied duty of good faith and fair dealing applied to the Seller's and Buyers' actions under the Contract. *See Bayou Land Co. v. Talley*, 924 P.2d 136, 154 (Colo.1996). Accordingly, we proceed with our review of the record to determine who is entitled to the $4000.00 earnest money deposit.

### B. No Written Agreement to Resolve Objections

The record here demonstrates that the sale and purchase of a home can be a stressful and unsuccessful event between the parties to a contract. Buyers' and Seller's difficulties centered primarily on the fact that they mutually agreed in the December 6 Contract to a closing date of December 31.

---

7. Commission Rule F states that: "In connection with the sale of real estate, a real estate broker shall use as the initial contract between buyer and seller one of the standard forms approved by the Real Estate Commission." 4 Colo.Code Regs. § 721–1 (2000) (Rule F–2, "Use of Commission Approved Forms").

8. Under the Commission's 1989 version of the Inspection Provision, when the buyer submitted a notice of unsatisfactory condition, the contract terminated unless the parties entered into a written settlement. Under the 1994 revision, the Commission provided that Buyer can withdraw the objection and obtain the property at the original terms of the contract. *See* Kent Jay Levine et al., *Guidebook to Colorado Real Estate Contracts & Disclosures* 73 (2d ed.1995).

Of course the holiday season intervened; nevertheless, the parties held to their agreed-upon December 31 closing date.

■ Buyers insisted on the repairs being accomplished no later than the day before closing, in order to verify their completion prior to taking possession. Seller became frustrated by her inability to obtain contractors during the holiday season. Not wishing to extend the closing date and also desiring to circumscribe the amount she would pay for repairs, Seller proposed to escrow a certain amount of money at closing toward accomplishing the repairs after closing. Buyers rejected this proposal. The parties did not pursue an extension of the Resolution Deadline or of the closing date in an effort to reach agreement and accomplish the repairs prior to closing.

As the County Court found—and we agree based on evidence in the record—Buyers and Seller did not enter into a written agreement resolving Buyers' timely inspection objections by the close of the December 17 Resolution Deadline. Accordingly, because Buyers did not withdraw their objections, the Contract terminated by its terms December 20, three days after the Resolution Deadline.

Both Buyers and Seller took separate actions on December 17 and December 18, respectively, to enter into different contracts,[9] thereby abandoning their effort at reaching agreement. Their motivations differed. Buyers believed that Seller did not intend to accomplish the repairs prior to closing, whereas Seller believed that Buyers did not intend to purchase the property on inspection objection terms reasonable to her.

Material to our decision, in accord with same conclusion reached by the County Court and the District Court, is the fact that Seller and Buyers did not agree on a resolution to the inspection objections by the Resolution Deadline, and the Contract terminated by its terms. While the Contract anticipated that Seller and Buyers had until the end of the Resolution Deadline to resolve their differences, it became apparent to the agents

and the parties in this case that Buyers and Seller were deadlocked.

■ Contrary to Seller's contention, there was no anticipatory breach or breach of the implied covenant of good faith and fair dealing on Buyers' part by their action in (1) not agreeing to Seller's proposal to accomplish the repairs after closing and limited in cost to Seller; or (2) entering into another residential contract before the Resolution Deadline. When they realized they could not converge on a resolution, the parties and their agents pursued their respective best interests and promptly accomplished separate transactions with other parties.

The trial court rejected Seller's claim of anticipatory breach, finding in regard to the inspection objections that: "There was never any agreement. There was a disagreement. Disagreements didn't have to be in writing." It further found that Buyers had not made "any attempt to manipulate ... the resolution deadline." It also concluded that contracting to purchase more than one house does not constitute an anticipatory breach.

An anticipatory breach or anticipatory repudiation "centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." § 4–2–610 cmt. 1, 2 C.R.S. (2000); *see also Schneiker v. Gordon*, 732 P.2d 603, 611 (Colo.1987) (quoting § 4–2–610 cmt. 1). Because the record supports the trial court's finding that no anticipatory breach occurred, we will not disturb it on appeal. *See Ad Two*, 9 P.3d at 376; *see also Johnson v. Benson*, 725 P.2d 21, 25 (Colo.App.1986) (citing *Page v. Clark*, 197 Colo. 306, 313–14, 592 P.2d 792, 796–97 (1979)).

The misstatement of Buyers' agent that her clients could terminate the Contract "for any reason" did not prevent Seller from agreeing to Buyers' inspection resolution terms. Had Seller agreed before the Resolution Deadline to Buyers' proposal, Seller would have had a claim to the earnest money deposit, as liquidated damages, upon Buyers'

---

**9.** Seller's agent contacted the prospective new Buyers on December 17, but Seller did not con-

tract with them until December 18.

failure to close in accordance with the terms of the Contract. Seller did not agree to Buyers' inspection resolution terms before the Resolution Deadline and Buyers did not withdraw their objections. Thus, the Contract terminated.

## III.

Accordingly, we affirm the judgment of the District Court upholding the County Court's judgment.