Xymina G. ROCHA, Plaintiff–Appellant,

v.

FINANCIAL INDEMNITY CORPORATION, Defendant–Appellee.

No. 05CA2156.

Colorado Court of Appeals, Div. VI.

Dec. 28, 2006.

Franklin D. Azar & Associates, P.C., Patricia D. Meester, Colorado Springs, Colorado, for Plaintiff–Appellant.

Walberg, Dagner & Tucker, P.C., Wendelyn K. Walberg, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

Plaintiff, Xymina G. Rocha, appeals the district court's order confirming an amended arbitration award which reduced an initial arbitration award against defendant, Financial Indemnity Corporation (FIC), an insurance company, to the policy limits for underinsured motorist coverage. We vacate the order in part, affirm it in part, and remand with directions.

## I. Background

Plaintiff was involved in an automobile accident with an uninsured motorist in July 2002. Plaintiff then made a claim for underinsured motorist benefits under her policy with FIC. The parties could not reach an agreement as to the fair value of plaintiff's claim, and the matter was submitted to arbitration in accordance with plaintiff's policy.

With respect to arbitration, the uninsured motorist coverage provision of plaintiff's policy provided:

If an insured person and we do not agree:

1 that the person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or

2 as to the amount of payment under this Part, either party may demand in writing that the issue be determined by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The insured person and we agree to consider ourselves bound by any

award made by the arbitrators pursuant to this coverage.

The record does not disclose that there was any disagreement between the parties at the time the matter was submitted to arbitration as to either the amount or applicability of policy limits. Nor does the record disclose that plaintiff raised any such issue in her demand for arbitration. The district court found that "[t]here is not a real dispute in this case that the policy limit is $25,000." Further, in their post-award filings with the arbitration panel and in the district court, in their briefs to this court, and in oral argument before this court, the parties agree that before the arbitration hearing they stipulated not to discuss policy limits at the hearing. *See Denver Buick, Inc. v. City & County of Denver*, 136 Colo. 484, 485, 319 P.2d 216 (1957) (appellate court could consider counsel's admissions at oral argument); *Troxel v. Town of Basalt*, 682 P.2d 501, 503 (Colo.App. 1984) (appellate court considered admissions in party's brief).

The issue of damages owed by the underinsured driver was heard by a panel of three arbitrators in October 2004. The arbitration panel awarded plaintiff $40,000 in such damages, plus costs and interest.

FIC filed a motion with the arbitration panel to reduce the award to the policy limits of $25,000. The panel entered an amended arbitration award reducing its award to the policy limits.

Plaintiff then filed a motion with the district court to confirm the initial arbitration award of $40,000. Plaintiff asserted that the arbitration panel had no authority to modify the initial award. In response, FIC argued that the arbitration award could be modified by the arbitration panel under the former versions of §§ 13–22–220 and 13–22–224(1), C.R.S.2006, and further argued that any award in excess of policy limits was beyond the arbitration panel's authority. The district court found that the arbitration panel had authority to modify the award because the award was imperfect as to form. Accordingly, the court confirmed the amended arbitration award.

## II.  Discussion

### A.  Confirmation of Amended Award

■ Plaintiff contends initially that the district court erred in confirming the amended arbitration award. We agree.

■ We review a district court's legal conclusions on a motion to confirm or vacate an arbitration award de novo. *See 1745 Wazee LLC v. Castle Builders Inc.*, 89 P.3d 422, 425 (Colo.App.2003).

The authority of an arbitrator to modify an arbitration award is controlled by § 13–22–220, C.R.S.2006 (formerly Colo. Sess. Laws 1975, ch. 154, § 13–22–211 at 575, before repeal and reenactment in 2004), which provides, in pertinent part: "On motion to an arbitrator by a party to an arbitration proceeding, the arbitrator may modify or correct an award ... [u]pon a ground stated in section 13–22–224(1)(a) or (1)(c) [or] ... [t]o clarify the award." Section 13–22–220(1)(a), (1)(c), C.R.S.2006. The grounds stated in § 13–22–224(1)(a) and (1)(c), C.R.S.2006 (formerly Colo. Sess. Laws 1975, ch. 154, § 13–22–215 at 576–77, before repeal and reenactment in 2004), include an evident mathematical miscalculation; an evident mistake in the description of a person, thing, or property referred to in the award; and an imperfection in the award in a matter of form, not affecting the merits of the decision on the claims submitted.

In *Applehans v. Farmers Ins. Exchange*, 68 P.3d 594 (Colo.App.2003), a division of this court interpreted these provisions in analyzing an arbitrator's authority to reduce an initial award in an uninsured/underinsured motorist (UM/UIM) case to the applicable policy limits. The division concluded that the amended award did not correct a miscalculation or mistake as to form, nor did it clarify the initial award. The division also concluded that the modified award dramatically changed the amount of the plaintiff's recovery, thereby affecting the merits of the controversy. Accordingly, the division held that the arbitrator exceeded his authority to modify the award under what is now § 130–22–220, and that the trial court erred in declining to vacate the final award. *Applehans, supra*, 68 P.3d at 596–98.

In attempting to distinguish *Applehans,* FIC argues that, in this case, the difference between the two awards by the arbitration panel is a matter of form, not substance. However, the amended award significantly altered the amount to be received by plaintiff. Consequently, it affected more than just the form of the award, but rather affected the merits of the controversy. *See Applehans, supra,* 68 P.3d at 598. In addition, because the initial award clearly set forth the amount of plaintiff's recovery, we reject FIC's argument that the initial award was confusing and that the amended award merely clarified it.

Therefore, we conclude that the arbitration panel exceeded its authority in modifying the initial arbitration award and that the district court erred in declining to vacate the amended award.

### B. Denial of Motion to Confirm Original Award

Plaintiff also contends that the district court erred in refusing to confirm the initial arbitration award. We disagree.

█ Where, as here, the issue of uninsured/ underinsured policy limits is not presented to the arbitrator at the arbitration hearing, whether an arbitrator's award in excess of such policy limits must be confirmed by the court initially requires an analysis of the scope of the arbitration provision. *See Farmers Ins. Exchange v. Taylor,* 45 P.3d 759, 761–62 (Colo.App.2001). On the one hand, clearly, if the arbitration provision authorizes the arbitrator to determine only the amount of payment the insured is legally entitled to recover from the uninsured or underinsured motorist, then the issue of policy limits is not properly before the arbitrator, and any award in excess of the policy limits may be vacated by the court upon timely motion. *See Kutch v. State Farm Mut. Auto. Ins. Co.,* 960 P.2d 93 (Colo.1998); *Applehans, supra,* 68 P.3d at 599.

On the other hand, it has been held by a division of this court that if the arbitration provision also authorizes the arbitrator to determine the amount of uninsured/underinsured motorist benefits payable to the insured under the terms of the policy, and there is a dispute concerning that issue, then the arbitrator has authority to rule on the issue of policy limits, and an award in excess of the policy limits is not ordinarily subject to judicial modification. *See Farmers Ins. Exchange v. Taylor, supra,* 45 P.3d at 762–63. In *Farmers Ins. Exchange v. Taylor,* the division held that, in this situation, the existence of policy limits and setoffs are affirmative defenses that must be raised and proved in the arbitration hearing, and such defenses are waived in a subsequent court proceeding to vacate, modify, or correct the award if evidence supporting them is not introduced during the arbitration hearing. *Farmers Ins. Exchange v. Taylor, supra,* 45 P.3d at 762–63.

In *Applehans,* however, another division of this court held that the insurer's coverage defenses are not waived if the insurer stipulated with its insured not to present evidence of policy limits or applicable setoffs to the arbitrator. In such circumstances, coverage defenses are not "relevant," and therefore the insurer did not " 'fail' to produce evidence on the issue but rather did not produce it based on its stipulation with [the insured]." *See Applehans, supra,* 68 P.3d at 599–600. The insurer in such a case may still seek to have the award vacated, modified, or corrected by the court by asserting that the arbitrator acted in excess of his or her powers. *See Applehans, supra,* 68 P.3d at 600; cf. *Kutch, supra,* 960 P.2d at 98 (where coverage issue is not arbitrable, insurer may ask court to reduce award on grounds it exceeded arbitrator's powers).

In *Farmers Ins. Exchange v. Taylor,* the division analyzed a two-part arbitration provision that contained, in the first part, language nearly identical to the language in both clauses 1 and 2 at issue here. However, the second part contained additional language providing that the "arbitrator shall determine … the amount of payment under this part as determined by this policy or any other applicable policy." *Farmers Ins. Exchange v. Taylor, supra,* 45 P.3d at 760. The division concluded that this additional language clearly authorized the arbitrator to rule on the issue of policy limits. *Farmers*

*Ins. Exchange v. Taylor, supra,* 45 P.3d at 762. In reaching this conclusion, the division distinguished out-of-state cases that involved arbitration provisions with language similar to the first part of the arbitration provision, which, as noted, is nearly identical to the language at issue here. The division did not, however, hold that language such as that in clause 2 of the policy at issue in this case— "as to the amount of payment under this Part"—does *not* give the arbitrator the authority to decide the issue of policy limits and limit any award accordingly. Rather, the division declined to address the meaning of such language and chose to rely instead on the additional language noted above.

■ In this case, the policy does not contain language such as that relied on by the division in *Farmers Ins. Exchange v. Taylor.* Plaintiff nevertheless contends that clause 2 renders the amount payable under the policy an arbitrable issue. Upon consideration of the plain language of the arbitration provision, we agree.

■ The interpretation of an insurance policy is a question of law. *Allstate Ins. Co. v. Huizar,* 52 P.3d 816, 819 (Colo.2002); *see also Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.,* 77 P.3d 804, 806 (Colo.App.2003). "[A] contract must be construed to ascertain and effectuate the intent of the parties as determined primarily from the language of the contract." *East Ridge of Fort Collins, LLC v. Larimer & Weld Irr. Co.,* 109 P.3d 969, 974 (Colo.2005); *accord Albright v. McDermond,* 14 P.3d 318, 322 (Colo.2000). Thus, we examine the language of the contract in accordance with the plain and generally accepted meaning of the words used. *East Ridge, supra,* 109 P.3d at 974; *Allstate Ins. Co., supra,* 52 P.3d at 819. Further, we examine the language in question not in isolation, but by looking to the contract as a whole. *Allstate Ins. Co., supra,* 52 P.3d at 819; *Randall & Blake, supra,* 77 P.3d at 806.

Here, clause 1 of the arbitration provision plainly refers only to the determination of damages owed by the uninsured or underinsured driver to the insured as compensation for injuries sustained by the insured in the accident.

Clause 2, however, plainly refers to the amount the insurer owes the insured under the policy. The phrase "amount of payment under this Part," read in context, means the payment by the insurer to the insured under "Part III" of the policy, the "Part" in which the arbitration provision is located. "Part III" of the policy deals with "Uninsured Motorist and Underinsured Motorist Coverage," and includes limitations on the "amounts payable" thereunder. We further note that clause 2 provides that the parties agree to be bound by "any award made by the arbitrator *pursuant to this coverage.*" (Emphasis added.) Given that the provision appears in the policy "Part" addressing uninsured or underinsured motorist "coverage," it is clear an arbitrator is empowered by the arbitration provision to decide "coverage" issues.

The arbitration provision at issue in this case therefore differs significantly from those in other cases where the supreme court and a division of this court have concluded coverage issues are not arbitrable. *See Kutch, supra,* 960 P.2d at 95, 98 (provision called for arbitration of "(1.) Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and, (2.) If so, in what amount?": issue of policy limits not arbitrable); *State Farm Mut. Auto. Ins. Co. v. Stein,* 886 P.2d 326, 327, 328–29 (Colo.App.1994) (clause identical to that in *Kutch, supra:* validity of antistacking clause in policy not arbitrable).

We recognize that courts in other jurisdiction are split on the question of whether clauses similar to that at issue in this case give the arbitrator authority to decide coverage issues in addition to the question of the amount of damages owed by the uninsured or underinsured driver. *Compare, e.g., Fisher v. State Farm Mut. Auto. Ins. Co.,* 243 Cal. App.2d 749, 52 Cal.Rptr. 721, 722, 723 n. 2 (1966) (phrase "amount payable hereunder" permitted arbitrator to consider setoffs required by policy); *Zimmerman v. Illinois Farmers Ins. Co.,* 317 Ill.App.3d 360, 251 Ill.Dec. 57, 739 N.E.2d 990, 993, 995–96 (2000) (phrase "amount of payment under this part, if any, as determined by this policy or any other applicable policy" permitted ar-

bitrator to consider policy provision for setoff for amount recovered from underinsured driver); *and Hennen v. St. Paul Mercury Ins. Co.*, 312 Minn. 131, 250 N.W.2d 840, 842–44 (1977) (phrase "amount of payment which may be owing under this Part" permitted arbitrator to determine stacking issue), *with Allstate Ins. Co. v. Cook*, 21 Ariz.App. 313, 519 P.2d 66, 67, 68 (1974) (phrase "amount of payment which may be owing under this endorsement" did not permit arbitrator to decide any issue other than the amount of the insured's damages); *and Liddy v. Companion Ins. Co.*, 181 Ind.App. 16, 390 N.E.2d 1022, 1024, 1026–28 (1979) (phrase "amount of payment which may be owing under this Coverage" did not permit arbitrator to decide any issue other than amount of damages insured is entitled to recover from other driver). *See generally* Randy J. Sutton, Annotation, *What Issues Are Arbitrable Under Arbitration Provisions of Uninsured and Underinsured Motorist Insurance*, 103 A.L.R.5th 1 (2002).

In our view, interpreting the phrase "amount of payment under this Part" as permitting an arbitrator to decide coverage issues recognizes and gives effect to the distinction between "damages" and "payment" in this context.

> "Damages" are a pecuniary compensation that may be recovered in the courts by a person who has suffered loss, detriment, or injury.... "Payment," on the other hand, is the fulfillment of a promise or the performance of an agreement.... An underinsured motorist policy is a contractual obligation to place the insured in the same position [the insured] would have occupied had the tortfeasor carried liability insurance in the same amount as the policyholder.... Accordingly, although an insured may be entitled to "damages" from the tortfeasor as compensation for [the insured's] injuries, [the insured] is entitled to a "payment" from [the insured's] insurer in fulfillment of the insurer's contractual obligation. Admittedly the amount of payment due under an insurance contract cannot be determined without considering the amount of damages, but this interrelationship does not eliminate the distinction.

*Zimmerman, supra*, 251 Ill.Dec. 57, 739 N.E.2d at 995 (citations omitted). Thus, we conclude that clause 2 empowers an arbitrator to decide the issue of policy limits.

■ Plaintiff argues that under *Farmers Ins. Exchange v. Taylor*, FIC waived its right to raise policy limits by failing to present evidence thereof at the arbitration hearing. We disagree, for two reasons.

Here, the arbitration provision in the policy, by its plain language, renders a coverage issue arbitrable only "[i]f the insured person and [FIC] do not agree," and there is no evidence that there was any disagreement over policy limits prior to the issuance of the arbitration award. Indeed, the district court found, and plaintiff does not contend otherwise on appeal, that "[t]here is not a real dispute in this case that the policy limit is $25,000." Hence, FIC was not required to raise the issue as an affirmative defense.

This result is not inconsistent with *Farmers Ins. Exchange v. Taylor, supra*. In that case, there was a disagreement as to the applicability of a UIM policy limit, *Farmers Ins. Exchange v. Taylor*, 45 P.3d at 760, and the division's holding turned on its conclusion that "a dispute over the policy limits and setoffs" was arbitrable. *Farmers Ins. Exchange v. Taylor, supra*, 45 P.3d at 763. Here, as noted, there was no such dispute. Plaintiff asserts a waiver of the issue solely because evidence of policy limits was not presented to the arbitration panel before it issued its original award.

In addition, it is undisputed that the parties stipulated that policy limits would not be discussed at the arbitration hearing. This stipulation effectively relieved FIC of its obligation to present evidence of policy limits at the hearing, and accordingly FIC did not " 'fail' to produce evidence on the issue," *Applehans, supra*, 68 P.3d at 600, such that it waived its right to assert policy limits after the award was issued.

We recognize that here there was no additional express stipulation that an award would be subject to policy limits, as there was in *Applehans*. However, such a stipulation was unnecessary to relieve FIC of its obligation to present evidence of policy limits

at the arbitration hearing, given the scope of the stipulation agreed to by plaintiff. By agreeing not to discuss policy limits at the hearing, the parties rendered the issue irrelevant to the sole issue the arbitration panel was asked to decide—the amount of damages owed to plaintiff by the other driver. Moreover, as noted, the record is devoid of any indication that there was any dispute between the parties at any time prior to the arbitration panel's award as to the amount and applicability of policy limits. Thus, under the circumstances here, we do not believe the stipulation could reasonably be understood as a waiver by FIC of its right to assert policy limits.

Therefore, FIC did not waive its right to assert that the original award exceeded policy limits. Accordingly, the trial court did not err in refusing to confirm the initial award.

### III. Conclusion

In light of our resolution of the issues, and the absence of any dispute over the parties' stipulation, cf. *Applehans, supra* (case remanded for determination of existence of stipulation), we conclude that FIC is entitled to modification of the original award to reduce it to the policy limits, $25,000. Though FIC did not file a motion in the district court to modify the award pursuant to and in accordance with the time limit set forth in § 13–22–223, see *Kutch, supra,* its failure to do so is excused by the fact the arbitration panel issued a modified award reducing the award to policy limits, see *Applehans, supra.*

The district court's order is vacated to the extent it confirmed the original award, and otherwise it is affirmed. The case is remanded to the district court for the entry of judgment in plaintiff's favor on an award in the amount of $25,000.

CARPARELLI, J., concurs.

WEBB, J., concurs in part and dissents in part.

Judge WEBB concurring in part and dissenting in part.

The parties' stipulation, which the majority describes as "not to discuss policy limits at the hearing," is absent from the record. The trial court made no findings concerning either the scope of the stipulation or the parties' underlying intent. Hence, without more information, I cannot accept the majority's conclusion that defendant, Financial Indemnity Corporation (FIC), adequately preserved its position that any arbitration award in favor of plaintiff, Xymina G. Rocha, would be subject to the $25,000 policy limit on UM/UIM coverage. Accordingly, I respectfully dissent from the majority's conclusion that "FIC is entitled to modification of the original award to reduce it to the policy limits, $25,000."

In *Applehans v. Farmers Ins. Exchange,* 68 P.3d 594 (Colo.App.2003), as here, although the insurer had presented no evidence of policy limits during the arbitration, it sought modification reducing the award in favor of the insured to reflect policy limits. The division noted, "Farmers argues plaintiff had stipulated that *any award would be subject to the policy limits and a setoff* before undertaking the arbitration and also had agreed that information concerning policy limits and setoffs would not be disclosed to the arbitrator." *Applehans, supra,* 68 P.3d at 600 (emphasis added). Assuming the existence of such a stipulation, the division concluded that despite *Farmers Ins. Exchange v. Taylor,* 45 P.3d 759 (Colo.App.2001), Farmers' failure to present evidence of policy limits would not preclude it from seeking to modify the award.

But because Applehans asserted that there had been no such stipulation, the division remanded for the parties to present "evidence to the trial court concerning the existence of a stipulation regarding policy limits, setoffs, and disclosure to the arbitrator." *Applehans, supra,* 68 P.3d at 601. The division directed the trial court to vacate the initial arbitration award, to the extent it exceeded policy limits, only "if the court finds that the parties had stipulated *to be bound by policy limits, to apply a setoff,* and not to submit those issues to the arbitrator." *Applehans, supra,* 68 P.3d at 601 (emphasis added).

Based on this description of the stipulation as asserted by Farmers, and the discussion of its effect if similarly determined by the trial court, I conclude that an insurer can seek modification of an arbitration award to reflect policy limits, despite having failed to present such evidence during the arbitration, only if it obtains a two-part stipulation: (1) information concerning policy limits will not be disclosed during the arbitration; and (2) the award would be reduced to policy limits by setoff.

I am unpersuaded by the majority's conclusion that "[s]uch a stipulation was unnecessary to relieve FIC of its obligation to present evidence of policy limits at the arbitration hearing given the scope of the stipulation agreed to by plaintiff" because, in my view, excusing this failure to present evidence of policy limits is not equivalent to reserving the right to do so later, by arguing setoff to either the arbitrator or the trial court. FIC's post-arbitration filings acknowledge that it perceived a tactical benefit in having the arbitrator determine the extent of Rocha's damages without knowing the policy limits. I discern no correlative benefit to Rocha. Hence, when FIC proposed the stipulation, Rocha may have acquiesced with the expectation of later asserting that FIC had failed to preserve its policy limits defense.

Here, the record presents no basis for concluding either that the parties agreed that the award would be subject to policy limits or that FIC had reserved the right to raise policy limits by arguing setoff after entry of the arbitration award. While requiring an insurer to prove one or the other, or lose its policy limits defense, "may be perceived as producing an inequitable result," nevertheless "excusing procedural defaults during or following arbitration would undermine the use of arbitration as a method of resolving disputes efficiently, conclusively, and comprehensively." *Farmers Ins. Exch. v. Taylor, supra,* 45 P.3d at 763.

In sum, I agree with the majority that the trial court erred in confirming the amended arbitration award. However, I would remand for an evidentiary hearing to determine the scope of the parties' stipulation and, if the stipulation is found ambiguous, then to ascertain the parties' underlying intent from extrinsic evidence. Further, unless the trial court determined that the parties either agreed the award would be subject to policy limits or understood that FIC reserved the right to present evidence of policy limits after the award entered, I would direct the court to confirm the initial award, on the basis that FIC did not adequately preserve its policy limits defense.